**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

ELIZABETH HARMES,

      Plaintiff,

v.

TOWN OF MONUMENT,

JACOB SHIRK, FORMER CHIEF OF POLICE,
In his individual and official capacities,

ROBERT BISHOP,
In his individual and official capacities,

MIKE FOREMAN,
In his individual and official capacities, and

BOARD OF TRUSTEES OF THE TOWN OF MONUMENT,

      Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

      Plaintiff, Elizabeth Harmes, by and through her counsel, Finger Law, P.C., submits this Complaint and Jury Demand against the Town of Monument, Jacob Shirk, former Chief of Police, Robert Bishop, former head of Human Resources, Mike Foreman, Town Manager, and the Board of Trustees of the Town of Monument (collectively, "Defendants"), and alleges:

## INTRODUCTION

1.     This is an employment discrimination and whistleblower action by employee Elizabeth Harmes against her employer, the Town of Monument, the Chief of Police, and the Board of Trustees, seeking damages to redress violations of Plaintiff's rights.

## PARTIES

2.     Plaintiff is an individual residing in Pueblo West, Colorado. She is a former employee of the Defendants.

3.     Defendant Town of Monument ("Monument"), is a municipal organization and is a political subdivision of the State of Colorado. Defendant Town of Monument at all relevant times was Plaintiff's employer within the meaning of relevant statutes, including 42 U.S.C. § 2000e. Defendant's principal offices are located at 645 Beacon Lite Road, Monument, CO 80132.

4.     Defendant Jacob Shirk ("Shirk") is the former Chief of Police of the Town of Monument. He was the Plaintiff's supervisor and is sued in his official and individual capacities. His address is 17635 Lake Overlook Court, Monument, El Paso County, Colorado 80132.

5.     Defendant Robert Bishop ("Bishop") is the former Head of Human Resources of the Town of Monument. He was a member of executive staff over the Plaintiff and is sued in his official and individual capacities. His address is 17635 Lake Overlook Court, Monument, El Paso County, Colorado 80132.

6.      Defendant Mike Foreman ("Foreman") is the Town Manager of the Town of Monument. He is a member of executive staff over the Plaintiff and is sued in his official and individual capacities. His address is 85 Sunflower Rd, lot 231, Colo Springs, El Paso County, Colorado 80907-3111.

7.      Defendant Board of Trustees of the Town of Monument ("Board") is the statutory board of elected officials, including the Town Manager and six trustees, who oversee and make governing decisions for the Town of Monument. Defendant Board at all relevant times was Plaintiff's employer within the meaning of relevant statutes, including 42 U.S.C. § 2000e. Defendant's principal offices are located at 645 Beacon Lite Road, Monument, CO 80132.

## JURISDICTION AND VENUE

8.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331. Ms. Harmes brings this action to recover damages caused by Defendants' violations of Title VII of the Civil Rights Act of 1964 as amended.

9.      This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the unlawful conduct complained of herein occurred in, and the relevant records and witnesses are located in, the District of Colorado.

## ADMINISTRATIVE PROCEDURE AND EXHAUSTION

11.     Ms. Harmes timely filed a Charge of Discrimination with the Equal

Employment Opportunity Commission on January 30, 2020, which was within 300 days of the alleged adverse employment acts.

12.     This case was designated 541-2020-01231 by the EEOC.

13.     The EEOC has not yet issued a Right to Sue Letter, but Plaintiff requested one on May 27, 2021, and the EEOC has issued a letter that it is in receipt of the request and will be issuing a Right to Sue Letter.

14.     This matter was timely filed.

15.     Ms. Harmes timely filed a Governmental Immunity Notice Letter, on October 28, 2019.

## GENERAL ALLEGATIONS

16.     Ms. Harmes is female and is therefore protected from unlawful discrimination based on her sex.

17.     Ms. Harmes was pregnant and experienced severe pregnancy complications during the relevant time period. She is therefore also protected from unlawful discrimination based on her sex, pregnancy, and disability/medical status relating to that pregnancy.

18.     Ms. Harmes was hired as the Town's Staff Support Manager in the police department, hire letter dated July 26, 2017, with an effective start date of August 28, 2017.

19.     The Town of Monument, and the police department, by information and belief employ more than 15 persons.

20.     Ms. Harmes was well qualified for the position.

21.     Prior to working for the Town of Monument, from January 2015 to August 2017, Ms. Harmes worked as the Police Systems Analyst for the City of Fort Collins. She met all performance standards for this position and left it only due to a family relocation to the Colorado Springs area.

22.     At the same time, during the wildfire season, from June 2012 to August 2017, Ms. Harmes worked for the United States Department of Agriculture and Department of Interior (Bureau of Land Management) as an Aircraft and Intelligence Dispatcher. She met all performance standards for this position.

23.     Prior to those positions, from January 2012 to June 2012, Ms. Harmes worked as a Property Control Technician and managed the retention of evidence for the City of Durango's police department. She met all performance standards for this position and left it due to an opportunity for greater pay and career advancement with the BLM.

24.     Ms. Harmes studied and earned a degree in Business Management and Information Technology from Colorado State University. She also obtained certifications in IT Systems Administration and Wildfire Management.

25.     The Town of Monument utilizes a 90-day introductory period of evaluation of new hires.

26.     At the end of Ms. Harmes' 90-day introductory period, she was issued a performance review.

27.     On this performance review, signed by Chief of Police Jacob Shirk

December 1, 2017 and by Ms. Harmes on December 8, 2017, rated Ms. Harmes on a five-level scale: Exceptional, Highly Effective, Proficient, Inconsistent, and Unsatisfactory.

28.     Ms. Harmes scored "Exceptional" in 3 of 11 categories, "Highly Effective" in 7 of 11 categories, and proficient in 1 of 11 categories.

29.     In the narrative section of the review, Shirk stated that Ms. Harmes was "highly motivated and technical" and that her goals aligned "perfectly" with the department's goals.

30.      Ms. Harmes' beginning salary was $50,000 gross annually or $4,166.67 monthly.

31.     After Ms. Harmes' introductory period was passed, her salary was increased by 6% to $53,000 gross annually, or $4,416.67 monthly.

32.     On January 1, 2018, Ms. Harmes' salary was increased due to her performance, by 3% to $54,590 gross annually or $4,549.17 monthly.

33.     On March 19, 2018, Ms. Harmes' salary was increased again, due to her taking on additional responsibilities and her performance, by 6% to $58,000 gross annually or $4,833.33 monthly.

34.     On January 1, 2019, Ms. Harmes' salary was increased again, due to her performance, by 3.5% to $60,030 gross annually or $5,002.50 monthly.

35.      Ms. Harmes always performed her employment duties for Defendants satisfactorily.

36.　Ms. Harmes at no time was given identification of her formal job duties.

37.　In her first performance review, the review asked, "In the coming year, how will you provide guidance and assistance for the employee to accomplish her goals?"

38.　Mr. Shirk responded to the question with only, "Provide guidance and training as necessary."

39.　Ms. Harmes was informed that she would be responsible for the entire workflow of all of Support Services for the police department.

40.　Ms. Harmes was also informed that she would be responsible for all of the evidence retention and cataloging for the entire department.

41.　Ms. Harmes was informed at the beginning of her employment that there were problems with the evidence retention practices of the department, due to employers and former Town Manager Chris Lowe.

42.　Ms. Harmes noted various problems with the records and evidence practices and specifically noted in an email of October 25, 2017, in just the first months of her employment, that it was so bad that she did not want access to the evidence room until a proper audit and inventory had been completed.

43.　Ms. Harmes refused to accept the evidence room key because there was no inventory or documentation of the evidence.

44.　Ms. Harmes informed Mr. Shirk that Monument was not following basic and standard operating procedures for evidence handling and records management.

45.　Mr. Shirk did not act on her concerns or email of October 2017.

46.     Despite the lack of details regarding the expectations of her position, Ms. Harmes' initial 90-day evaluation praised her for being "new to the position she has demonstrated the skill necessary," that she is "highly effective," "prioritizes the workload of others," "relentlessly working towards improving efficiency," "needs very little supervision," and "makes sure to communicate with others… prior to making any changes."

47.     Ms. Harmes continued performing well above expectations for all of 2017 and all of 2018.

48.     Ms. Harmes regularly attempted to raise concerns about evidence-keeping practices, which were ignored by Chief Shirk.

49.     At all times Defendants were aware of the problems and concerns raised by Ms. Harmes.

50.     On January 31, 2018, Chief Shirk was issued a performance evaluation by Town Manager Chris Lowe which rated Shirk's performance as unsatisfactory and needing improvement.

51.     On February 5, 2018, Shirk was placed on administrative leave as part of a progressive discipline plan due to, according to Lowe, "poor performance," "missteps," and a "lack of accountability to anyone but himself."

52.     The Town Board voted to affirm the suspension of Shirk, but returned him to duty February 20, 2018.

53.     The Town has refused open records requests about the investigations and

documents of these incidents on the basis that Town employees have "privacy rights and liberty interests."

54.     Also in February of 2018, the Colorado Bureau of Investigations found that Shirk had made numerous violations of computer security, record-keeping, and employee training and that immediate correction was needed.

55.     Shirk never corrected these problems.

56.     Shirk responded to being placed on administrative leave by filing a complaint against Lowe and the Town, alleging that the town had a pervasive culture of harassment and mistreatment of women, including but not limited to, for example, noting that Pam Smith, Interim Manager, was called "Big Tits McGee."

57.     In May 2018, Pam Smith, the Finance Manager and Interim Town Manager, stated to Ms. Harmes that "Maybe it's just time to call CBI (Colorado Bureau of Investigations) and shut the freaking [police] department down I don't know."

58.     In May 2018 Ms. Smith also stated to Ms. Harmes, "If you in anyway are harassed or questions or anything else about this please let me know. I will not allow anyone to use this type of information to retaliate against an employee. And if it does start to happen and gets uncomfortable for you to work with the police department, let me know because we will figure something out with the town because I think you are a valuable employee and an awesome person, and I would not want to lose you."

59.     Ms. Smith informed Ms. Harmes that the police department was corrupt and that she felt she needed to communicate with Ms. Harmes through their private email

accounts due to the corruption.

60.     Ms. Smith asked Ms. Harmes at this time if she would assist Ms. Smith in identifying the problems in the police department.

61.     Ms. Smith informed Ms. Harmes that she earned every bonus she received because she was among the best employees in the entire Town.

62.     Another employee, a subordinate, informed Ms. Harmes that she needed to inform Chief Shirk that he would not meet with the Chief alone to discuss anything related to evidence-keeping, because the Chief could not be trusted.

63.     Another of Ms. Harmes' subordinate staff members resigned and in her resignation letter informed Ms. Harmes that she could not work in an environment with such poor communication and policies from those who run the department and command staff.

64.     In June 2018, Town Manager Chris Lowe was voted by the Board unanimously out of office due to claims of harassment and mismanagement but was paid a $115,000 severance.

65.     Ms. Pam Smith became Interim Town Manager until December of 2018, at which time Mike Foreman became Interim Town Manager.

66.     In August 2018, Ms. Harmes informed the Colorado Bureau of Investigations that DNA kits had not been kept frozen as required by policy.

67.     Ms. Harmes learned that many DNA samples were no longer viable and therefore numerous criminal suspects could not be convicted due to lack of evidence.

68.     Ms. Harmes learned that some of these kits were never submitted to the CBI for processing. The CBI had no record of them being submitted as they should have been.

69.     Ms. Harmes wrote memos about possible violations of the law, including "Violation of HB13-1020," which the Chief of Police directed Ms. Harmes to change to "Kit was not sent to CBI pursuant to HB13-1020."

70.     Ms. Harmes' performance merited a pay increase at the conclusion of her initial 90 days, another pay increase for her overall 2017 performance, and another pay increase three months later in March 2018.

71.     Ms. Harmes in 2018 became pregnant.

72.     Ms. Harmes was fearful, due to Chief Shirk's failure to follow policy and legal standards, of informing him that she would need a leave of absence due to pregnancy.

73.     Ms. Harmes, due to her fear of Chief Shirk, informed the Chief of Human Resources, Robert Bishop, first in May of 2018 of her pregnancy, and again on July 30, 2018, due to insurance coverage issues and the Town's contract with insurance providers changing.

74.     On or about September 18, 2018, Ms. Harmes learned that she would need surgery for a medical condition separate but related to her pregnancy.

75.     On September 19, 2018, Ms. Harmes informed the Town Chief of Finance and Administration, Pam Smith, and Bishop, that she needed to meet with them for

assistance regarding workplace accommodations for her pregnancy and the needed surgery.

76.     In the September 19, 2018, email communication, Ms. Harmes stated that she "do[es] not trust Chief and…was hoping I could chat with both of you about my options (employment and benefits) before I talk with him."

77.     On October 17, 2018, Ms. Harmes obtained a completed Pregnancy Accommodation Request from her medical provider.

78.     The Pregnancy Accommodation Request was signed by her doctor, OB/GYN Christian York, M.D.

79.     The Pregnancy Accommodation Request stated that Ms. Harmes had a due date of December 29, 2018, and that she was requesting to work from home due to complications of a hernia causing significant pain and would need surgery following the delivery of her baby.

80.     On October 18, 2018, Ms. Harmes submitted an interoffice memo request pregnancy accommodations and modifications of her position due to medical condition.

81.     In the accommodation request memo, Ms. Harmes requested that she be allowed to work from home starting December 3, 2018, and through two months of maternity.

82.     She also informed Defendants in the memo that she had bilateral inguinal hernias that would need to be surgically repaired and could need eight or more weeks off from work for recovery.

83.     She also informed Defendants that even if she did not have the surgery, she would need accommodations for modified work duties because of the hernias.

84.     She stated that her accommodation request in that event would be for a modified work schedule of continued working from home with two days in the office, plus days in the office for required meetings and staffing needs.

85.     In the accommodations request, Ms. Harmes requested the following equipment: laptop, computer monitor, scanner/printer, and police cell phone. She stated that if she were permitted this equipment, she could perform all job duties.

86.     Ms. Harmes again submitted a reasonable accommodations request to the Town Human Resources Department and Chief Shirk on November 9, 2018.

87.     In this request, she asked to work from home from December 3, 2018, to March 29, 2018.

88.     The requests were accompanied by letters from her doctor supporting the need for accommodations due to medical needs.

89.     The original letters were not accepted by Defendants and Ms. Harmes had to request multiple new versions of letters from her OBGYN to meet Defendants' satisfaction that she had a medical basis for her requested reasonable accommodations.

90.     Ms. Harmes originally requested the accommodation of partial work from home to begin in October but was denied this request. Defendants approved only the accommodation to begin December 3, 2018.

91.     On   November   14,   2018,   Defendants   approved   Ms.   Harmes'

accommodations request, however, the Defendants' reasonable accommodation approval letter required three re-drafts due to incorrect or untrue information contained within it, which Ms. Harmes pointed out and asked for revision.

92.     At one point Ms. Harmes was chastised by Interim Town Manager Pam Smith, HR Manager Robert Bishop, and Chief Jacob Shirk about requesting the accommodation language be amended to meet policy standard.

93.     When Ms. Harmes met to discuss and defend the accommodation as needed, she was called "difficult," "entitled," and "bitchy" which Ms. Harmes left this meeting in tears.

94.     In the end, Ms. Harmes had to draft the Defendants' own accommodations approval letter.

95.     Ms. Harmes' evaluation at the end of calendar year 2018 was highly positive.

96.     Signed by Shirk on December 15, 2018, the evaluation rated Ms. Harmes as Exceptional in 14 of 16 categories. She was rated as Proficient and Highly Effective in the remaining two categories.

97.     Ms. Harmes began working from home in December 2018.

98.     Ms. Harmes noticed an immediate change in demeanor from Shirk upon her filing the accommodations request.

99.     Also, in December 2018, the Town Board placed Mike Foreman as the new Interim Town Manager.

100.   Foreman had been the City Manager for Craig, Colorado and had been fired from this position for undisclosed personnel issues.

101.   The request was not approved by Mr. Shirk but rather the Town's Human Resources Chief and the Town Finances and Administration Chief.

102.   Throughout her pregnancy leave, Ms. Harmes was continually retaliated against by Chief Shirk; specifically, by assigning impossible tasks, like that she was expected to re-write the policy manual, that she was expected to manage the CBI report updating on the Department's progress in compliance with CBI and legal standards, refusal to communicate or respond to Ms. Harmes' emails when she requested clarification or assistance on these projects, and more.

103.   On March 21, 2019, Ms. Harmes met with Robert Bishop and advised him that she wished to file a formal complaint against Chief Shirk.

104.   Mr. Bishop requested that she place her concerns in writing and submit to him on Monday, March 25, 2019.

105.   On Monday, March 25, 2019, Ms. Harmes submitted a written complaint and attachments of example emails of her communications with Chief shirk which she alleged were retaliatory.

106.   On that same day, March 25, 2019, Ms. Harmes was issued a letter from Robert Bishop informing her that her work from home accommodation was denied moving forward.

107.   The denial asserted that Ms. Harmes' modified work schedule from her

pregnancy and surgery was not supported by medical documentation.

108.   No one from the Defendants' offices asked Ms. Harmes for new medical documentation.

109.   Ms. Harmes could have provided medical documentation supporting her need for continued accommodations if asked.

110.   On March 26, 2019, Ms. Harmes met with Robert Bishop and again asserted that Chief Shirk was part of the denial of her accommodations request because he was retaliating against her for making the request and for raising her concerns about policy with him.

111.   Ms. Harmes also alleged that crime statistics and data that was being delivered to the Town Management and Town Board was falsified.

112.   On April 5, 2019, Ms. Harms filed another formal complaint with Human Resources in which she asserted historical mismanagement of the records and evidence units, including failures of maintaining a clear chain of custody of evidence.

113.   In this complaint, she asserted that she raised these concerns with the Chief of Police, but that he refused to assist in rectifying the concerns.

114.   In this complaint, Ms. Harmes asserted that she was the victim of retaliation and a hostile work environment by the Chief.

115.   On May 2, 2019, Ms. Harmes was issued a "Performance Opportunity/Enhancement Memorandum" from the Police Chief.

116.   This memo was further retaliation and an attempt to "paper" Ms. Harmes'

personnel file to create pretext for a termination.

117.   The memo included text that "end runs around the chief are not acceptable" – i.e., retaliation for Ms. Harmes' going to Human Resources with her concerns.

118.   On May 11, 2019, the Town Board placed then-Treasurer Pam Smith on administrative leave and investigated for alleged corruption.

119.   On May 17, 2019, Ms. Harmes was issued a letter from Chief Shirk stating that her employment was being terminated, with a final pay date of May 31.

120.   Ms. Harmes had a right of appeal pursuant to Town and Police policy, but the Chief failed or intentionally did not advised her of her appeal rights in the termination letter.

121.   Ms. Harmes requested the policy to appeal the termination.

122.   Robert Bishop on May 28, 2019, informed Ms. Harmes that he could not find the policy or procedures for appeals.

123.   Robert Bishop at this time also advised that there are "no reprimands in your personnel file for the Town of Monument, I also checked with the PD, there are no reprimands in your police personnel file."

124.   Mr. Bishop advised that he would follow-up with Ms. Harmes to provide the policy for appeals but did not do so.

125.   On May 30, 2019, Ms. Harmes again requested a copy of the disciplinary appeals process. Bishop again did not respond.

126.   On June 13, 2019, 13 days after her final paycheck, Ms. Harmes submitted

a memo letter to Mr. Bishop again advising that she was appealing the decision and wished to follow the appeals process and included her reasons for doing so and why she disagreed with the termination.

127.   On July 1, 2019, Ms. Harmes again requested a copy of the appeals process and a status of the appeal letter that she submitted on June 13.

128.   On July 8, 2019, Ms. Harmes again requested a response from Mr. Bishop. Mr. Bishop stated that he was out of town.

129.   On July 11, 2019, Ms. Harmes again emailed Mr. Bishop regarding her appeal.

130.   Finally, on July 25, 2019, Ms. Harmes received a letter advising her that her termination was upheld.

131.   This termination letter of July 25, 2019, was from and signed by Mike Foreman.

132.   That same summer, Chief Jacob Shirk was terminated by the Town Board on a vote of no confidence in his performance.

133.   Every employee of the police department signed a letter of no confidence in Shirk, stating that he was incompetent and that they feared retaliation from him for even writing the letter.

134.   The termination was ostensibly categorized as a voluntary resignation but was at the request of the Town Board. The Board paid Shirk a settlement of $35,000 to resign.

135.   Under Shirk, employee morale fell to an "all time low" and turnover skyrocketed as 17 employees resigned in the prior 3 years.

136.   No formal or informal hearing or due process was provided.

137.   Defendant's actions are an ongoing and continuing adverse action.

138.   Defendant's actions are intentional, willful, and wanton.

## **FIRST CLAIM**

DISCRIMINATION BASED ON SEX UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. § 2000)

139.   Plaintiff re-alleges and incorporates herein all paragraphs above.

140.   At all relevant times, Defendants were a covered employer subject to Title VII.

141.   Ms. Harmes is a female and as such, she falls under the protected classes of sex at the relevant time period.

142.   Defendants knew that Ms. Harmes was a member of protected classes under Title VII.

143.   Ms. Harmes suffered an adverse employment action when the Defendant retaliated against her by terminating her employment and denying her appeal.

144.   Ms. Harmes' sex as a female requesting accommodations for her pregnancy, was a motivating factor in Defendant's action.

145.   The Defendants' stated reason for the termination, poor performance, was pretextual.

146.   Title VII makes it unlawful for an employer to discriminate against any individual with respect to the terms, conditions, or privileges of employment based on the individual's protected class(es).

147.   Ms. Harmes suffered tangible and intangible damages as a result of the Defendants' adverse action, including but not limited to loss of income, loss of benefits, and emotional pain and suffering as a result of Defendants' actions.

## **SECOND CLAIM**

### DISCRIMINATION AND/OR RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (42 U.S.C. § 12101)

148.   Plaintiff re-alleges and incorporates herein all paragraphs above.

149.   At all relevant times, Defendants were employers covered under the Americans with Disabilities Act.

150.   Defendants knew that Ms. Harmes was a person with a qualified disability under the A.D.A.

151.   Ms. Harmes suffered an adverse employment action when she was terminated from her employment and when her accommodations were denied and when her appeal was denied.

152.   Ms. Harmes' status as a person with a qualified disability and/or her request for reasonable accommodations was a motivating factor in the Defendants' decision to take the adverse employment actions.

153.   Defendants' stated reason for the adverse employment decisions, poor performance, was pretextual.

154.   Ms. Harmes suffered tangible and intangible damages as a result of the Defendants' adverse action, including but not limited to loss of income, loss of benefits, and emotional pain and suffering as a result of Defendants' actions.

## THIRD CLAIM

RETALIATORY WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

155.   Plaintiff re-alleges and re-incorporates herein all paragraphs above.

156.   On March 21, 2019, and prior thereto, Ms. Harmes made good-faith, legitimate, protected complaints about the conduct of Chief Jake Shirk.

157.   These complaints did not relate solely to herself but related to matters of public concern, such as evidence retention failures and possible legal violations related to evidence-keeping practices.

158.   Ms. Harmes was discharged as a direct result of her good faith, legitimate outcries of possible legal violations.

159.   Defendant took the actions to terminate Ms. Harmes and deny her appeal rights knowingly, willfully, and wantonly, that she had made protected outcries.

## FOURTH CLAIM

DENIAL OF DUE PROCESS UNDER THE 14TH AMENDMENT THROUGH § 1983

160.   The Fourteenth Amendment forbids state actors from depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. Amen. XIV.

161.    Ms. Harmes had a right to and reasonable expectation of continued employment during terms of good service under the terms of her employment and under the employee policy manual.

162.    Ms. Harmes had a right to due process and a hearing or other process to appeal her termination.

163.    Defendants failed to advise her of her appeal rights.

164.    Defendants failed to provide the required due process to Ms. Harmes.

165.    As a result, Ms. Harmes was deprived of her rights and privileges under the Fourteenth Amendment and lost her employment.

## FIFTH CLAIM

FIRST AMENDMENT – WHISTLEBLOWER - RETALIATION, 42 U.S.C. § 1983

166.    Plaintiff reincorporates all previous allegations

167.    Ms. Harmes was engaged in constitutionally protected activity, exercising her First Amendment right to free speech describing her concerns and whistleblower outcries about mismanagement and government abuses in the police department.

168.    Plaintiff was terminated.

169.    Plaintiff's termination was due to her exercising her First Amendment free speech rights.

170.    Plaintiff suffered loss of income, benefits, and other tangible and intangible damages as a result of Defendants' actions.

171.    Given that employees' First Amendment rights are clearly established law,

no reasonable person could have determined that Ms. Harmes' actions were not engagement in clearly established lawful rights.

172.    Defendants' actions were willful, wanton, malicious, and a direct cause of Plaintiff's injuries.

## SIXTH CLAIM

MUNICIPAL MONELL LIABILITY, 42 U.S.C. § 1983 – AUTHORIZED ACTION (AGAINST TOWN)

173.    Plaintiff incorporates all previous allegations.

174.    A single unconstitutional act or decision, when taken by an authorized decisionmaker, may be considered a policy and thus subject a municipal entity to liability.

175.    The Town Board authorized Jacob Shirk to take the adverse actions complained of by Plaintiff.

176.    No reasonable person could believe that the Defendants' actions were lawful or permitted by the Constitution.

177.    The Town is liable under the First and Fourteenth Amendments via 42 U.S.C. § 1983.

178.    As a direct and proximate result of the Town's unlawful actions, Plaintiff has suffered and continues to suffer economic and non-economic damages for which the Town is liable.

179.    The Town's acts were willful, wanton, and malicious.

## SEVENTH CLAIM

SUPERVISORY LIABILITY AGAINST DEFENDANTS SHIRK, BISHOP, AND FOREMAN

180.   Plaintiff incorporates all previous allegations.

181.   Defendants Bishop, Shirk, and Foreman played active roles in Defendants' unconstitutional actions, including retaliation under the First Amendment.

182.   These Defendants encouraged and condoned the termination of Plaintiff, by creating negative and false information about Plaintiff's performance to manufacture pretext for the termination.

**EIGHTH CLAIM**

TORTIOUS INTERFERENCE WITH CONTRACT AGAINST DEFENDANTS SHIRK, BISHOP, AND FOREMAN

183.   Plaintiff reincorporates all previous allegations.

184.   Plaintiff had an effectively contractual right to her employment during terms of good service via the employment and personnel policies of the Town.

185.   Defendants Shirk, Bishop, and Foreman knew of Plaintiff's right to her employment.

186.   Defendants Shirk, Bishop, and Foreman induced the Town of Monument and the Board to breach the Plaintiff's right to continued employment and implied contract by making false claims against Plaintiff about her employment performance.

187.   Defendants Shirk, Bishop, and Foreman had no lawful justification for taking the adverse action against Plaintiff, and their actions were malicious, willful, wanton, and in bad faith.

188.    Ms. Harmes was damaged by Defendants' unlawful interference and has suffered and continues to suffer economic and non-economic damages for which Defendants are liable.

## NINTH CLAIM

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (OUTRAGEOUS CONDUCT) AGAINST DEFENDANTS SHIRK, BISHOP, AND FOREMAN

189.    Defendants acted intentionally or recklessly in terminating Plaintiff without just cause.

190.    Defendants' conduct was extreme and outrageous.

191.    Defendants' actions relating to Plaintiff's termination are the cause of the distress to Plaintiff.

192.    Plaintiff suffered severe emotional distress as a result of Defendants' conduct.

## TENTH CLAIM

### CONSPIRACY TO VIOLATE CIVIL RIGHTS, 42 U.S.C. 1985 (3) AGAINST DEFENDANTS SHIRK, BISHOP, AND FOREMAN

193.    Plaintiff incorporates all previous allegations.

194.    Defendants Shirk, Bishop, and Foreman conspired to violate Ms. Harmes' constitutional rights.

195.    Defendants Shirk, Bishop, and Foreman came to a mutual understanding that it was in their mutual interest to defame and terminate Ms. Harmes because she was

a whistleblower of the Town's wrongful conduct.

196. Ms. Harmes' constitutional rights were violated as a result of this conspiracy, causing her irreparable harm.

197. As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendants are liable.

198. Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to deter others from engaging in this type of conduct in the future.

## **PRAYER FOR RELIEF**

Plaintiff prays that this Court enter judgment for the Plaintiff and award Plaintiff damages as established by the fact finder:

1. Removal of the termination letter and performance memo;

2. Reinstatement to the position;

3. Economic damages, including without limitation lost back wages and benefits from loss of pay cause by termination;

4. Compensatory damages, including without limitation, special damages and damages for loss of reputation, loss of opportunity for professional growth and future additional promotions, loss of opportunity for promotion, and inability to seek another job elsewhere given the stigma of the termination;

5. Non-economic damages for emotional distress, pain and suffering, inconvenience, mental anguish, loss of reputation, and other non-pecuniary losses such

as loss of confidence and self-esteem;

6.      Punitive damages where allowable by law;

7.      Future wage loss and benefit loss;

8.      An award of reasonable attorneys' fees and costs;

9.      Pre-judgment and post-judgment interest as provided for under the law from the earliest possible date;

10.     Retain jurisdiction over the action to ensure full compliance with the Orders of this Court and a declaratory judgment that Defendant's conduct complained of herein is unlawful;

11.     Injunctive relief to stop the hostile work environment of the Defendant; and

12.     Such other relief as the Court deems just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY.**

Respectfully submitted this 23rd day of July, 2021.

FINGER LAW, P.C.

*/s/ Casey J. Leier*
Casey Leier, #45155
29025-D Upper Bear Creek Rd.
Evergreen, CO 80439
Phone: (303) 674-6955
Fax: (303) 674-6684
Email: casey@fingerlawpc.com

Plaintiff address:
166 S. Brewer St
Pueblo West CO   81007